UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HAROLD RAY BOONE,

            Petitioner,

v.                              Case No. 3:14-cv-1099-J-39JRK

SECRETARY, DOC, et al.,

            Respondents.

_____

**ORDER**

**I.   INTRODUCTION**

Petitioner Harold Ray Boone challenges a 2004 Suwannee County conviction for: count one, lewd/lascivious conduct on a child (solicitation) (victim A.H.); count two, attempted lewd/lascivious exhibition in presence of a child (victim B.B.); count three, capital sexual battery on a child under 12 years of age (victim B.B.); count four, capital sexual battery on a child under 12 years of age (victim B.B.); count five, lewd/lascivious molestation of a child under 12 years of age (victim B.B.); count six, lewd/lascivious conduct on a child (solicitation) (victim A.S. and/or A.H.); count seven, sexual performance by a child (victim A.H. or A.S.); count eight, capital sexual battery on a child under 12 years of age (victim A.H.); count nine, capital sexual battery on a child under 12 years of age (victim A.S.); count ten, capital sexual battery on a child under 12 years of age (victim A.S.); count eleven, capital sexual battery on a child under 12 years of

age (victim C.B.); count twelve, capital sexual battery on a child under 12 years of age (victim C.B.); count thirteen, capital sexual battery on a child under 12 years of age (victim C.B.); and count fourteen, possession of child pornography. <u>See</u> Second Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 10).

Petitioner raises six grounds of ineffective assistance of counsel. This Court must be mindful that in order to prevail on this Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 19). In support of their Response, they submitted Exhibits (Doc. 22).[1] Petitioner filed a Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Reply) (Doc. 21). <u>See</u> Order (Doc. 12).

---

[1] The Court hereinafter refers to the exhibits contained in the Exhibits as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix. Otherwise, the page number on the particular document will be referenced. The Court will reference the page numbers assigned by the electronic docketing system where applicable.

## II.   CLAIMS OF PETITION

Petitioner raises six grounds in his Petition: (1) ineffective assistance of counsel for failure to move to dismiss counts one, two, five, and six of the information for failure to charge criminal offenses at the time that they allegedly occurred, resulting in illegal sentences; (2) ineffective assistance of counsel for failure to object to the jury instruction for count fourteen, possession of child pornography (possession of a motion picture(s) and/or photographs); (3) ineffective assistance of counsel for failure to object to a discovery violation; (4) ineffective assistance of counsel for failure to move to dismiss count 6 or count 7 on double jeopardy grounds, resulting in illegal sentences for these two counts; (5) ineffective assistance of counsel for failure to move for a judgment of acquittal for count three; and (6) ineffective assistance of counsel for failure to request a limiting instruction at the time Williams Rule evidence was admitted at trial.

Respondents urge this Court to deny the Petition.  Response at 10-31.  The Court will address these grounds, See Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required in this Court.

## III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas

- 3 -

corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), petition for cert. filed, – U.S. – (U.S. Oct. 14, 2016) (No. 16-6444). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[2] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).
>
> ..."It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [Harrington v. Richter, 562 U.S. 86, 101 (2011)] (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See,

---

[2] "This presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 133 S.Ct. 1625 (2013).

> e.g., Mitchell v. Esparza, 540 U.S. 12, 18,
> 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer,
> 538 U.S. at 75 ("The gloss of clear error
> fails to give proper deference to state courts
> by conflating error (even clear error) with
> unreasonableness."); Williams v. Taylor, 529
> U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000) ("[A]n unreasonable application of
> federal law is different from an incorrect
> application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013),

cert. denied, 135 S.Ct. 67 (2014).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), petition for cert. filed, - U.S. - (U.S. Nov. 10, 2016) (No. 16-6855); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99; see also Johnson v. Williams, 133 S.Ct. 1088, 1096 (2013).

Where the last adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285.  To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal habeas court is not limited to assessing the reasoning of the lower court.  Wilson, 834 F.3d at 1239. As such,

> even when the opinion of a lower state court
> contains flawed reasoning, [AEDPA] requires
> that [the federal court] give the last state
> court to adjudicate the prisoner's claim on
> the merits "the benefit of the doubt," Renico
> [v. Lett, 449 U.S. 766, 733 (2010)] (quoting
> [Woodford v. Visciotti, 537 U.S. 19, 24
> (2002)] ), and presume that it "follow[ed] the
> law," [Woods v. Donald, --- U.S. ----, 135
> U.S. 1372, 1376 (2015)] (quoting Visciotti,
> 537 U.S. at 24).

Wilson at 1238; see also Williams, 133 S.Ct. at 1101 (Scalia, J., concurring).

## IV.  PROCEDURAL HISTORY

Respondents provide a brief procedural history in their Response.  Response at 1-3.  Petitioner accepts this procedural history as accurately presented.  Reply at 1.

## V.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Ground One

In his first ground, Petitioner claims ineffective assistance of counsel for failure to move to dismiss counts one, two, five, and six of the information for failure to charge criminal offenses at the time that they allegedly occurred, resulting in illegal sentences.   Petition at 5.   Petitioner exhausted this ground by raising it in ground two of his Second Amended Rule 3.850 motion.   Ex. P at 6-8.   The trial court denied relief, id. at 158-61, and the First District Court of Appeal per curiam affirmed.   Ex. S.

Of import, the state circuit court recognized the applicable two-pronged standard as set forth in Strickland as a preface to addressing the multiple claims of ineffective assistance of counsel.   Ex. P at 157.   In this particular claim of ineffective assistance of counsel, Petitioner asserted that the conduct charged in counts one, two, five, and six may not have been criminal offenses because the jury did not specifically find that Petitioner committed the offenses after October 1, 1999, when the law was amended.   Id. at 158.   The court found that all of the counts were criminal offenses prior to October 1, 1999, and all were second degree felonies prior to October 1, 1999.[3]   Id. at 158-61.

---

[3] After the state's concession, the circuit court determined that Petitioner's Rule 3.800(a) motion should be granted and Petitioner resentenced on counts one, five, six, and seven.   Ex. P at 92, 105-21.   The court originally sentenced Petitioner to life without parole on count one, and to thirty-year sentences on counts five, six, and seven.   Ex. A at 75-77, 87-95.   They were all second

- 7 -

In reviewing each count, the circuit court concluded Petitioner failed to meet the prejudice prong of <u>Strickland</u>. With respect to count one, the court decided there was no prejudice, because even if counsel had successfully moved to dismiss count one, the state would have re-charged the same conduct under a different provision. Ex. P at 159. "[A]ccordingly, there could have been no prejudice from Counsel's alleged ineffectiveness, as the Defendant could have been convicted of another crime carrying the same degree of felony and the same maximum sentence for the charged conduct." <u>Id</u>. The court went on to find that the conduct alleged in count one ("soliciting A.H. to dance with her vagina and anus exposed") was a criminal act "during all respective times charged in the amended information (January 1, 1999 through March 31, 2000)." <u>Id</u>.

In addressing Petitioner's claim with respect to count two, the court found that the charge of masturbating in the presence of a child under 16 years of age could have been charged under a different provision (800.04(4), Fla. Stat., rather than 800.04(7), Fla. Stat.), if the offense occurred prior to October 1, 1999. Ex. P at 160. The conduct amounted to a second-degree felony under either version because the Petitioner is over eighteen years of age (as alleged in the amended information). <u>Id</u>. <u>See</u> Ex. A at 19.

---

degree felonies, with a statutory maximum of fifteen years. Pursuant to a stipulation of the parties, the circuit court resentenced Petitioner on counts one, five, six, and seven to concurrent fifteen-year terms in prison. <u>Id</u>. at 105-21.

The circuit court also found that, with regard to count six, the charge of soliciting children under the age of 16 to rub vaginas, the offense could have been charged under 800.04(2), Fla. Stat., which prohibited forcing or enticing a child to commit masturbation or actual lewd exhibition of the genitals. Ex. P at 160. Again, the circuit court found that under both versions of the statute, these criminal actions constituted second degree felonies because Petitioner was over 18 years of age. Id. See Ex. A at 20.

In conclusion, the court opined:

> As explained in this Court's discussion of Count I, if Counsel had successfully raised either of the charging errors regarding Counts II and VI, the State could have filed an amended information properly charging the illegal conduct under the earlier version of the statute. Anderson, 537 So.2d at 1375. Therefore, applying the same analysis, the alleged conduct remained criminal at all relevant times under section 800.04, and the Defendant cannot establish the necessary prejudice to warrant relief. See Tukes, 346 So.2d at 1056; Wood, 354 So.2d at 135.

Ex. P at 160.

Finally, with regard to count five, the circuit court found the behavior charged, including the touching of the buttocks of a person under the age of 16 in a lewd or lascivious manner, was a criminal offense under the earlier-version of 800.04(1), Fla. Stat. Ex. P at 161. The court noted that both the pre-amendment and post-amendment versions of the statute classified the conduct as criminal and as a second degree felony, because Petitioner is over the age of 18. See Ex. A at 20. The court found Petitioner was

not prejudiced, concluding that even if counsel had successfully raised the issue, the state simply could have re-charged the offense under the appropriate version of the statute because the conduct was, at all relevant times, illegal under 800.04. Ex. P at 161.

After vetting each count, the circuit court summarized the above and concluded that counsel's performance was not deficient under <u>Strickland</u> and denied the claim raised in the second ground of the Second Amended Rule 3.850 motion.  The First District Court of Appeal (1st DCA) affirmed.

This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary.  Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief.  He has not accomplished that task.

Indeed, if there is any reasonable basis for the court to deny relief, the denial must be given deference.  Here, deference under AEDPA should be given to the 1st DCA's adjudication.  Its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Ground one is due to be denied.

- 10 -

### B.  Ground Two

In his second ground, Petitioner contends that his counsel was ineffective for failure to object to the jury instruction for count fourteen, possession of child pornography (possession of a motion picture(s) and/or photographs).   Petition at 7.   Petitioner exhausted this ground by raising it in ground three of his Second Amended Rule 3.850 motion.   Ex. P at 8-9.   The trial court denied relief, id. at 161-62, and the 1st DCA affirmed per curiam.   Ex. S.

In this ground, Petitioner complains that although counsel objected to the admission of some of the photographs (three altered photographs), he failed to object to the jury instruction for count fourteen.   As previously noted, the circuit court, in its decision denying the Rule 3.850 motion, recognized the applicable two-pronged Strickland standard before addressing the multiple claims of ineffective assistance of counsel.   Ex. P at 157.   With regard to this claim in particular, the court immediately found no prejudice.   Ex. P 162.   In doing so, the court opined that because the amended information charged the offense by possessing the photographs or the motion picture, and the overwhelming evidence presented at trial showed that Petitioner possessed the homemade motion picture containing sexual conduct by a child, there was no prejudice.   Id.   The circuit court reasoned that even if counsel's performance was deficient "by failing to have the jury instructed that the three altered photographs (of the eleven total photographs) could not form the basis for a conviction[,]" there

- 11 -

was still no prejudice due to the overwhelming evidence of the possession of the motion picture. Id.

Of importance, the 1st DCA affirmed the decision of the circuit court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this regard.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Accordingly, ground two is due to be denied.

In the alternative, the record shows that counsel was aware that three of the pictures had been altered and attempted to keep them from being published to the jury. Ex. E at 512. He objected to the three altered photographs. Id. The state responded that they were not being offered as "child pornography so to speak[,]" but were being offered because they were relevant, showing Petitioner molesting the children. Id. at 514. The court admitted

- 12 -

the pictures.  Id.  Defense counsel asked that the three pictures be delineated to identify which ones he objected to on the record. Id.  Counsel stated he was not objecting to the other eight photographs.  Id.  After the court's ruling, all of the pictures were published to the jury.  Id. at 515.

In supplementing his motion for judgment of acquittal, counsel reiterated that as far as the possession of child pornography charge, his understanding was that the state had to show that the child was under the age of 12.  Ex. F at 614.  He explained with regard to the three altered photographs, each photograph portrays a child's head on someone else's body.  Id.  Therefore, he argued there should be a judgment of acquittal with regard to the possession of pornography charge because there was no proof that the body in the three altered photographs was that of someone under 12 years of age.  Id.

The state responded that it had made a prima facie case by the introducing the videotape, and the charge was videotapes and/or photographs.  Id. at 615.  The state admitted that "those [the three altered photographs] aren't pornographic or child pornography, but the videotape is and the other photographs could be."  Id.  The court denied the motion for judgment of acquittal because the charge included the videotapes.  Id.  The jury instruction mentioned possession of a motion picture and/or photographs which in whole or in part Petitioner knew included any sexual conduct by a child.  Id. at 704.

- 13 -

Based on the rulings of the trial court, it did not amount to deficient performance for counsel to fail to object to the jury instruction.  He tried to keep the three altered photographs from being admitted, but the trial court ruled against him.  When counsel attempted to gain an acquittal based on those particular altered photographs, the court denied the motion stating:

> I think there's evidence of child pornography.  You can make that argument to the jury about the pictures.  But he is going to make the argument that it's the videos.  So I think that is the way we have to do it.  I will deny the motion on that count because I think the videos also could be part of the evidence in that particular count.

Ex. F at 615.

Defense counsel did not perform deficiently.  He objected to the three photographs and he moved for acquittal on the pornography count based on the three altered photographs.  After the court's rulings, defense counsel's failure to object to the jury instruction does not amount to deficient performance.[4]  Even assuming Petitioner satisfies the performance prong of <u>Strickland</u>, he has failed to satisfy the prejudice prong due to the overwhelming evidence that Petitioner possessed the motion picture containing child pornography.  Ex. P at 162.

---

[4] Although the better course would have been for the trial court not to have admitted the altered photographs, once the court made its decision to allow them, any failure to object was inconsequential.

- 14 -

### C.  Ground Three

The third ground presents a claim of ineffective assistance of counsel for failure to object to a discovery violation.  Petition at 8.  Petitioner exhausted this ground by raising it in ground four of his Second Amended Rule 3.850 motion.  Ex. P at 9-11.  The trial court denied relief, id. at 162-66, and the 1st DCA affirmed the circuit court's decision.  Ex. S.

The ground is founded upon an allegation that there was a change in the testimony of a critical witness, the mother of victim B.B., with respect to her deposition testimony compared to her trial testimony.  The record showed that B.B.'s mother, Jana Bogle, briefly viewed one videotape prior to the deposition and she was unable to identify numerous items depicted in the tape that would have established that the tape was made in Florida.  After the deposition, Ms. Bogle watched the videotapes at the behest of the prosecutor, and she made notes, but she did not give them to the state.  Ms. Bogle brought the notes to trial.

Defense counsel objected to the use of the notes.  Ex. F at 588.  He also requested a copy of the notes, stating he believed them to be discoverable material.  Id.  The prosecutor responded that he would give defense counsel a copy.  Id.  The court found that the defense was entitled to a copy of the notes and they could be used during cross examination.  Id. at 589.  Defense counsel proceeded to reference the notes during his cross examination of Ms. Bogle.  Id. at 601.

- 15 -

During cross examination, Ms. Bogle admitted that, in her deposition testimony, she did not recognize many things that she now recognized in the trailer.  _Id_. at 601.  She reminded counsel that she did previously mention during her deposition that the television was in the wall.  _Id_. at 602.  She reiterated that she did not mention all of the additional items during her deposition. _Id_.  On re-direct, Ms. Bogle pointed out that she had briefly viewed one video at her father's house prior to the deposition, but she had not viewed all of the tapes thoroughly.  _Id_. at 605.

The circuit court, after reviewing this claim of ineffective assistance of counsel and referencing the record, held the following:

> Contrary to the Defendant's allegation that the witness *changed* her testimony, this Court finds that the witness was merely able to recall or observe *additional* details that she was not aware of at the time of her deposition.  This is evidenced by the fact that she explained that she did originally recall and testify about "the TV being in the wall" during her deposition-establishing that the witness, after later reviewing the video tape again, was able to observe additional evidence that merely corroborated her earlier deposition testimony.  *See attached Trial Transcript at 602.*  There is no evidence or indication that the State pressured the witness to change her testimony or coached the witness in any way.  Instead, as explained above, the Defendant's trial counsel actually illustrated the cause for the different testimony-the witness more carefully reviewed the video tapes *after* her deposition.
>
> Moreover, as the record establishes, the only time that the witness had observed any of the video tapes prior to her deposition was on

> the evening of their discovery when she found
> out that her children had been sexually abused
> by the Defendant. *See attached Trial*
> *Transcript at 581.* The witness's admission to
> being "really shaken up" upon learning that
> her children had been sexually abused further
> explains her inability to recall specific
> details concerning the location of the
> trailer. In short, this Court is unwilling to
> find that the witness's inability to recall
> minute details from the video tape during her
> deposition was intentional or calculated with
> the State. Instead, this Court finds it
> reasonable that the witness, after being
> directed to review the video tapes months
> later, was able to easily identify objects
> that pinpointed the trailer's location.

Ex. P at 165.

The court emphasized the fact that counsel effectively cross examined the witness after she was able to recall additional details. Id. The court also found that counsel effectively attempted to impeach or discredit her testimony by asking her extensively about the renovations to the trailer. Id. at 166. The court determined that because the record showed that the witness did not change her testimony, there was no merit to this claim of ineffectiveness on counsel's part. Id. Finding no deficient performance, the circuit court denied this claim. Id. The 1st DCA affirmed.

With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision. The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny. Petitioner raised the issue in his post conviction motion, the

trial court denied the motion, and the appellate court affirmed. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground three.

### D. Ground Four

In his fourth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to move to dismiss count six or count seven on double jeopardy grounds, resulting in illegal sentences. Petitioner exhausted this claim by raising it in his Second Amended Rule 3.850 motion in ground six. Ex. P at 12-13. The circuit court denied this ground. <u>Id</u>. at 167-69. The 1st DCA affirmed. Ex. S.

The Double Jeopardy Clause "provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' U.S. Const., Amdt. 5." <u>United States v. Dixon</u>, 509 U.S. 688, 695-96 (1993). The Clause protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense. <u>Garrett v. United States</u>, 471 U.S. 773, 777-78 (1985); <u>Brown v. Ohio</u>, 432 U.S. 161 (1977). It is the protection against multiple punishments for the same offense which is at issue in this case.

Although the <u>Blockburger</u>[<u>v. U.S.</u>, 284 U.S. 299 (1932)] same-elements test (inquiring whether each offense contains an element

not contained in the other) is a rule of statutory construction barring subsequent punishment or prosecution if the offenses are considered to be the same offense, it is not controlling if there is an apparent indication of contrary legislative intent. Boler v. State, 678 So.2d 319, 321 (Fla. 1996) (citing Albernaz v. United States, 450 U.S. 333, 340 (1981)). Indeed, "legislative intent is the dispositive question" when addressing a double jeopardy issue. Id. (citation omitted). "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). See Jones v. Thomas, 491 U.S. 376, 381-82 (1989); Ohio v. Johnson, 467 U.S. 493, 499 (1984) ("the sentencing discretion of courts is confined to the limits established by the legislature").

The Florida Supreme Court succinctly describes this concept:

> The most familiar concept of the term "double jeopardy" is that the Constitution prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense. The constitutional protection against double jeopardy is found in both article I, section 9, of the Florida Constitution and the Fifth Amendment to the United States Constitution, which contain double jeopardy clauses. Despite this constitutional protection, there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments. See Hayes v. State, 803 So.2d 695, 699 (Fla. 2001) ("As the United States Supreme Court explained in Brown v. Ohio, 432 U.S. at 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d

- 19 -

187 (1977), where multiple punishments are imposed at a single trial, 'the role of the constitutional guarantee against double jeopardy is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments arising from a single criminal act.'"); Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982) ("The Double Jeopardy Clause 'presents no substantive limitation on the legislature's power to prescribe multiple punishments,' but rather, 'seeks only to prevent courts either from allowing multiple prosecutions or from imposing multiple punishments for a single, legislatively defined offense.'") (quoting State v. Hegstrom, 401 So.2d 1343, 1345 (Fla. 1981)). As we recognized in Gordon v. State, 780 So.2d 17 (Fla. 2001):

> The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate punishments for the two crimes." M.P. v. State, 682 So.2d 79, 81 (Fla. 1996); see State v. Anderson, 695 So.2d 309, 311 (Fla. 1997) ("Legislative intent is the polestar that guides our analysis in double jeopardy issues...."). Absent a clear statement of legislative intent to authorize separate punishments for two crimes, courts employ the Blockburger test, as codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist. See Gaber v. State, 684 So.2d 189, 192 (Fla.1996) ("[A]bsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the Blockburger 'same-elements' test pursuant to section 775.021(4) ... is the sole method of determining whether multiple punishments are

> double-jeopardy    violations.")
> (footnote omitted).

Gordon, 780 So.2d at 19-20 (footnote omitted).

Valdes v. State, 3 So.3d 1067, 1069-70 (Fla. 2009) (footnote omitted).

In making this determination, the question arises as to whether these charged offenses are found in separate statutory provisions; whether one offense is an aggravated form of the other; and whether they are degree variants of the same offense. McKinney v. State, 66 So.3d 852, 855 (Fla.) (per curiam), cert. denied, 132 S.Ct. 527 (2011). Upon review, count six (lewd/lascivious conduct on a child (solicitation)) and count seven (sexual performance by a child) are found in separate statutory provisions, one offense is not an aggravated form of the other, and that by statute, solicitation is not a degree of sexual performance by a child nor is sexual performance by a child a degree of solicitation.

The two separate and distinct statutes are 800.04, Fla. Stat. (count six), and 827.071, Fla. Stat. (count seven).[5] Ex. P at 167. Count six required proof of the victim's age as less than 16 years and a lewd and lascivious act, and count seven required proof that the victim's age was less than 18 years and a performance of sexual conduct. Id.

---

[5] Chapter 800 of the Florida Statutes addresses Lewdness and Indecent Exposure, while Chapter 827 concerns Abuse of Children.

Count six of the amended information charged: that "on one or more occasions between the 1st day of January, 1999, and March 31, 2000, in Suwannee County, Florida, being 18 years of age or older, [Petitioner] did then and there unlawfully solicit A.S. and/or A.H., a person under 16 years of age, to commit a lewd or lascivious act by having A.S. and A.H. rub vaginas, contrary to Florida Statute 800.04(6)." Ex. A at 20. Count seven charged "on one or more occasions between the 1st day of January 1999, and March 31, 2000, in Suwannee County, Florida, knowing the character or content thereof, [Petitioner] did employ, authorize or induce A.H. or A.S., children less than 18 years of age, to engage in a sexual performance, to wit: masturbation, contact or union of sex organs, oral sex and/or fondling of sex organs, contrary to Florida Statute 827.071." Ex. A at 20.

The trial court instructed the jury, in pertinent part:

> As to Count VI, before you can find the defendant guilty of lewd and lascivious conduct on a child by solicitation the State must prove the following two elements beyond a reasonable doubt:
>
> 1. That [A.H.] was under the age of 16 years; and that the defendant solicited [A.H.] to commit a lewd or lascivious act.[6]

---

[6] The trial court previously defined lewd and lascivious; "[t]he words lewd and lascivious mean the same thing, a wicked, lustful, unchaste, lascivious, licentious intent on the part of the person doing the act." Ex. F at 683. Later on, the court instructed, "lascivious" means "lustful, normally tending to excite a desire for sexual satisfaction." Id. at 685.

> Again, solicitation means command, encouraged, hired, requested or tried to induce.

Ex. F at 692.

The court continued:

> We go to Count VII. Before you can find the defendant guilty of sexual performance by a child the State must prove the following two elements beyond a reasonable doubt. Here we are dealing with [A.H.] and [A.S.].
>
> That [A.S.] and [A.H.] were under the age of 18 years.
>
> The defendant knowing the character and content thereof did employ, authorize or induce [A.H.] or [A.S.] to engage in a sexual performance.
>
> Sexual performance means any performance or part thereof which includes sexual conduct by a child less than 18 years of age.
>
> Sexual conduct means actual or simulated sexual intercourse, deviant sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, actual lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or if such person is a female, the breast, with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates a sexual battery is being or will be committed. That is the definitions that are in Count VII.

Ex. F. at 694-95.

In denying this ground of the post conviction motion, the court explained that count six requires that the victim be under 16 years of age, and count seven requires that the victim be less that 18 years of age. Ex. P at 169. The court further noted that count

- 23 -

six forbids solicitation of a lewd or lascivious act, while count seven prohibits employing, authorizing or inducing the child victim to engage in a sexual performance. Id. The court also recognized that the jury instructions defined lewd or lascivious act differently from sexual performance.[7] Id. Ultimately, the court concluded that these separate statutes (800.04 and 827.071) forbid different and distinguishable conduct: lewd or lascivious acts versus sexual performance, and soliciting versus employing, authorizing or inducing. Ex. P at 169. The court further found that the conduct charged in both counts was not identical to "rubbing vaginas." Id. Count six referenced having the victims "rub vaginas,", but count seven referenced "masturbation, contact or union of sex organs, oral sex and/or fondling of sex organs[.]" Ex. A at 20. Thus, the court found that count seven charges alternative conduct. Ex. P at 169.

In denying this ground, the circuit court found that counts six and seven are based on separate statutes and "constitute different elements by forbidding different sexual conduct, and the amended information did not charge the same sexual conduct against the same victims twice[.]" Id. The appellate court affirmed the circuit court's decision to deny the claim of ineffective

---

[7] The court defined sexual performance: "any performance or part thereof which includes sexual conduct by a child less than 18 years of age." Ex. F at 694.

assistance of counsel for failure to raise a double jeopardy claim and move to dismiss either count six or count seven.

There is a qualifying state court decision and AEDPA deference is warranted. The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground four because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

Upon consideration, Florida intends that separate sentences be imposed for these violations. See Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 703-704 (11th Cir.) (per curiam) ("In the context of multiple punishments, the purpose of double jeopardy is simply to ensur[e] that the total punishment did not exceed that authorized by the legislature. Therefore, in enforcing the federal double-jeopardy guarantee, we must examine the various offenses for which a person is being punished to determine whether, as defined by the legislature, any two or more of them are the same offense. In effect, we ask whether the offenses are sufficiently distinguishable to permit the imposition of cumulative punishment." (footnote, citations and internal quotations omitted)), cert. denied, 136 S.Ct. 114 (2015). The offenses charged in counts six and seven constitute different offenses. Therefore, there is no

double jeopardy violation.   As such, ground four is due to be denied.

### E.   Ground Five

In ground five, Petitioner raises a claim of ineffective assistance of counsel for failure to move for a judgment of acquittal for count three.  Petition at 12.  He exhausted his state court remedies by raising this ground in his Second Amended Rule 3.850 motion as ground eight.[8]  Ex. P at 14-15.  The circuit court denied this ground.   Id. at 170-71.   The 1st DCA affirmed per curiam.  Ex. S.

This claim has absolutely no merit.   Based on the record before the Court, Petitioner's counsel did move for a judgment of acquittal on all counts, including count three.  Ex. F at 606.  The circuit court, in denying this ground, found that counsel did not render a deficient performance by making a broader motion for

---

[8] In his Second Amended Rule 3.850 motion, Petitioner asserted that defense counsel should have moved for judgment of acquittal on count three because victim B.B. denied digital penetration of her vagina.  Ex. P at 15.  However, the state presented other evidence. Faye Frazier testified that BB told her Petitioner did put his finger in her, but there was some question as to whether the incident occurred in Mississippi, or was the most recent occurrence, undefined as to location.  Ex. E at 402-404, 406-407, 409.  Dr. Bethany Mohr, M.D., testified that BB told her Grandpa Ray touched her "down here where [sic] his finger."  Id. at 423. Jamie Fralick attested that he saw the videotape of BB being molested by Petitioner, with Petitioner penetrating BB's "private parts" with his tongue and finger.  Id. at 450-51.  Finally, Jana Bogle testified that the incident filmed on the first videotape occurred in Petitioner's Florida trailer.  Ex. F at 559, 563.  Ms. Bogle attested that BB was approximately 2.5 years of age on the videotape.  Id. at 559, 587.

judgment of acquittal than post conviction counsel believed should have been adopted.  Ex. P at 170-71.  The court stated: "[a]s the Defendant has not demonstrated the deficient performance prong of the Strickland standard, it is unnecessary to delve into the other prong of the Strickland standard for this claim."  Id. at 171 (citation omitted).  The 1st DCA affirmed.

With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision.  The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground five.

## F.  Ground Six

In his sixth and final ground, Petitioner claims he received the ineffective assistance of counsel due to counsel's failure to request a limiting instruction at the time Williams Rule evidence was admitted at trial.  See Ex. E at 519; Ex. F at 583.  Petitioner raised this issue in ground nine of the Second Amended Rule 3.850 motion.  Ex. P at 15-16.  The circuit court denied this ground, finding it failed under the Strickland standard.  Id. at 171.

The circuit court recognized that defense counsel did not request a limiting instruction at the time the videotape containing Williams Rule evidence of uncharged crimes against victims A.F. and C.F. (the state's Exhibit No. 10) was admitted, but a Williams Rule instruction was given to the jury.  Id.  The court concluded that although it may have been desirable, in hindsight, for counsel to have requested an instruction earlier in the proceeding, counsel's performance was not deficient in this regard because the jury was ultimately properly advised regarding the Williams Rule evidence. Id. at 172.  Also, the circuit court opined that the result of the proceeding, even if counsel had requested the limiting instruction when the evidence was admitted, "likely would not have been different but for this alleged error, especially when considering the overwhelming evidence of the Defendant's guilt."[9]  Id.

The 1st DCA affirmed this decision.  There is a reasonable basis for the court to deny relief, and this decision must be given deference.  The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

---

[9] The circuit court mentioned that the overwhelming evidence of the Petitioner's guilt included the homemade videotape depicting the criminal conduct for which Petitioner was convicted (state's Exhibit No. 7, published to the jury).  Ex. P at 172 n.9, 542, 595-97.

The record supports the conclusion that counsel's performance was not deficient.  Upon receiving notice that the state intended to offer evidence of other crimes, wrongs, or acts, counsel filed a Notice of Objection to and Motion for Order Prohibiting "Williams Rule" Testimony.  Ex. A at 38-39.  The court, however, after conducting a hearing, held that the Williams Rule testimony would be allowed.  Ex. C at 213-74; Ex. A at 47.  Defense counsel renewed his objections during the course of the trial.  Ex. E at 403, 519. During the charge conference, it was noted that there was a video in evidence, Williams Rule evidence, that the state decided not to publish, but was sending back with the jury.  Ex. F at 631.  Some discussion was made that the instruction should be given after the close of evidence, but the court noted that the jury had not seen the videotape at issue.  Id. at 632.  Defense counsel discussed the Williams Rule instruction with the court.  Id. at 632-35. Ultimately the court decided to give the instruction.  Id. at 635.

As a matter of record, the court instructed the jury:

> Now as to the evidence that we talked about, that was presented and talked about in closing.  The evidence has been admitted to show similar crimes, wrongs or acts allegedly committed by the defendant upon other children not included in the information that will be considered by you only as that evidence relates to proof of motive, opportunity, intent, preparation, plan, knowledge, identity or corroborate the testimony of the victims.

Ex. F at 706-707.

When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in Strickland, 466 U.S. at 689. The record shows defense counsel filed a notice of objection and moved to prohibit the Williams Rule evidence.  He did not prevail on his motion.  He did, however, renew his objections during the course of the trial.  Based on the record and the discussion during the charge conference, the jury did not view the Williams Rule videotape immediately after it was admitted or during the course of the trial as the state elected not to publish it, but the court admitted the tape and sent it back with the jury.[10]  Defense counsel requested a Williams Rule instruction, although he did not agree with the breadth of the instruction.  Nevertheless, the court gave the broad Williams Rule instruction before the jury retired to deliberate.

Under these circumstances, counsel's performance was not deficient.  Even assuming *arguendo* counsel's performance was deficient, Petitioner has not established prejudice, failing to meet Strickland's prejudice prong.  Petitioner has failed to show "that it was 'reasonably likely' that, but for counsel's deficient performance, the result of the proceeding would have been

---

[10] Based on the discussion during the charge conference, the Court concludes that the tape containing Williams Rule evidence was not shown to the jury during the presentation of the evidence.  Ex. F at 631.  State's Exhibit No. 7, concerning the charged crimes, was published to the jury.  Ex. F at 542, 595-97.

different." Stoddard, 600 F. App'x at 709 (citation omitted).  As such, ground six is due to be denied.  Petitioner is not entitled to habeas relief and the Second Amended Petition is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Second Amended Petition (Doc. 10) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Second Amended Petition, **the Court denies a certificate of appealability.**[11] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[11] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of February, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/7
c:
Harold Ray Boone
Counsel of Record